## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 51053

| | |
|---|---|
| EUGENE TURLEY and KARLEEN DAVIS, husband and wife, <br><br>     Plaintiffs-Counterdefendants-Respondents, <br><br> v. <br><br> KAREN KOONCE, an individual; and SCOTT PARKER, an individual, <br><br>     Defendants-Counterclaimants-Appellants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Filed: October 28, 2024

Melanie Gagnepain, Clerk

**THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY**

---

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Lynn G. Norton, District Judge.

Judgment for breach of contract, <u>affirmed</u>; and order awarding costs and attorney fees, <u>affirmed</u>.

Johnson May; Matthew T. Christensen, Boise, for appellants. Matthew T. Christensen argued. Stephen Sennett argued.

Gravis Law, PLLC; Andrew J. Howard, Boise, for respondents. Stephen E. Sennett, Meridian, argued.

---

LORELLO, Judge

Karen Koonce and Scott Parker appeal from a judgment for breach of contract and an order awarding costs and attorney fees. We affirm the district court's summary judgment decision and the order awarding costs and attorney fees.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Koonce and Parker leased a residence from Eugene Turley and Karleen Davis. The first lease agreement (Lease) was executed on July 11, 2020, for a term of six months beginning July 31,

1

2020, through January 31, 2021. Although Parker resided at the residence and was listed in the Lease as a tenant, Parker[1] was not a signatory on the Lease. The Lease was signed only by Koonce and Becky Carson-Eisenman, the "lessor" representing Precision Property Management. Davis was identified in the Lease as the "landlord"; Turley was not identified anywhere in the Lease.

Section 1.12 of the Lease provides, in pertinent part:

> By written agreement, Lessee and Lessor may renew this Residential Lease for additional terms, however, absent renewal of the lease at the end of the initial term referenced in this Residential Lease. This agreement shall continue for successive terms of one month and shall be terminable by either Lessor or Lessee upon delivery of a 10-day written notice of termination after the original 6 months has concluded.

Section 1.30 of the Lease provides:

> This Residential Lease constitutes the entire agreement between the parties and may not be modified except in writing signed by both parties. Any prior understanding or representation of any kind preceding the date of this lease agreement shall not be binding on either party except to the extent incorporated in this agreement.

On January 27, 2021, Carson-Eisenman sent a letter to Koonce and Parker, which indicated it was an "addendum to extend the lease" until July 31, 2021 (First Addendum). Koonce signed the First Addendum on February 1, 2021, and the property manager signed it on January 30, 2021. The First Addendum reads, in relevant part:

> This Residential Lease will commence on July 31, 2020 and end at midnight on January 31, 2021 (6 months) now extended 6 months to July 31, 2021 with the option to renew for an additional six months on July 31, 2021.

The First Addendum also includes a handwritten note that reads: "If the option to renew is not exercised, then the lease shall automatically renew on a month to month basis." The last sentence in the First Addendum states: "All other details of the original lease."

On September 6, 2021, the property manager sent another letter to Koonce and Parker reflecting a second extension of the Lease (Second Addendum). The Second Addendum reads, in part:

---

[1]     The Lease incorrectly identifies Parker as Scott Koonce.

> This residential Lease will commence on July 31, 2020 and end at midnight on January 31, 2021 (6 months) now extended 6 months to March 31, 2022 with the option to renew for an additional six months on March 31, 2022.

As with the First Addendum, the Second Addendum concludes with the language: "All other details of the original lease." Koonce signed the Second Addendum on September 8, 2021. As with the First Addendum, the only other signature on the document was by the property manager.

There was a third and final addendum to the Lease in 2022 (Third Addendum). The Third Addendum includes the following provisions:

> Original Agreement: This Residential Lease was first entered into on July10, 2020 by Precision Property Management, LLC, Becky-Carson Eisenman (Lessors) and Karleen Davis (Landlord) and Karen Koonce (Tenant(s)/Lessee(s)), for the premises [located in Boise, ID].[2]
>
> First Addendum: A first addendum was incorporated into the lease January 27, 2021, amending the rental amount and parking arrangements, and extending the lease.
>
> Second Addendum: A second addendum was incorporated into the lease September 8, 2021, extending the lease to March 31, 2022, with the option to renew for an additional six months.
>
> Because [the property management company] is discontinuing services in Boise, this addendum transfers the lessor obligations and rights to the owners of the property, [Davis and Turley], effective January 1, 2022. In addition, all services previously provided by [the property management company] will now be provided by the property owners. Starting on January 1, 2022, please contact them for anything you would previously have contacted [the property management company].

---

[2]    This recitation of the original agreement in the Lease is not entirely accurate. The Lease states:

> This Residential Lease is entered into on July 10, 2020 by Precision Property Management, LLC, Becky Carson-Eisenman (Lessors) and Karleen Davis (Landlord) and Karen and Scott Koonce (Tenant(s)/Lessee(s)), for the premises located [in Boise, ID]. This Residential Lease will commence on July 31, 2020 and end at midnight on January 31, 2021. This lease has the option to extend to month to month with a 10 day notification of move out.

Of note, the Lease acknowledges Parker was a tenant/lessee even though he was not a signatory on the Lease and the original agreement in the Lease includes the option to extend to what is essentially an at-will tenancy. Subsequent communications between the parties acknowledge Parker's tenancy as something more than an at-will tenant. Those communications also reflect, as described above, the practice of extending the lease for six-month terms rather than month-to-month.

The Third Addendum concludes with: "All other details of the existing agreements remain in force." The Third Addendum was signed by Koonce (1/25/22), Davis (2/25/22), and Turley (illegible date).

Pursuant to the Second Addendum, the Lease expired on March 31, 2022. Approximately five weeks later, on May 8, 2022, Turley and Davis sent Koonce and Parker a letter advising them that Turley and Davis had "started the process" of selling the residence leased by Koonce and Parker and asked them to "vacate th[e] premises on or before June 30, 2022." Turley and Davis recognized that Koonce and Parker had "kept the unit and furnishings in good condition and anticipate[d] refunding [their] full deposit." The letter cited Section 1.12 of the Lease as authorizing the notice to vacate and further stated: "If there is anything we can do make [sic] this easier, please let us know. We realize that this may be disruptive."

Koonce took the position that, sometime prior to the expiration of the extended term agreed upon in the Second Addendum, she orally informed Davis of her intent to exercise the option to renew the Lease for an additional six months--until September 30, 2022. Koonce further averred that Davis stated she would prepare another addendum reflecting as much but never did. As a result, Koonce and Parker remained at the property and obtained counsel who informed Turley and Davis of Koonce and Parker's belief that they had a legal right to remain at the property until September 30, 2022.

On July 27, 2022, following an exchange of emails between counsel for the parties that were unsuccessful in resolving the dispute, Turley and Davis filed an unlawful detainer complaint seeking to evict Koonce and Parker. Koonce and Parker filed an answer and counterclaims for breach of contract and quiet title.[3] Koonce and Parker vacated the property by September 30, 2022, at which point Turley and Davis took possession.

On October 10, 2022, Turley and Davis sought leave to amend their complaint because their original unlawful detainer claims were moot since Koonce and Parker vacated the premises over one week prior to the motion. Turley and Davis contended they should be permitted to substitute new breach of contract and unjust enrichment claims in place of their moot unlawful

---

[3] On January 25, 2023, the district court entered judgment dismissing the counterclaim for quiet title and awarded costs and attorney fees to Turley and Davis as to that claim.

4

detainer claims. The district court allowed the amendment. The unjust enrichment claims sought damages in the form of rent for July through September 2022. Although Koonce and Parker made the rent payments, Turley and Davis refused to accept them; consequently, counsel for Koonce and Parker held the rent payments in his trust account during the pendency of the litigation.

Turley and Davis's breach of contract claims were predicated on Koonce and Parker's refusal to vacate the residence on or before June 30, 2022. Turley and Davis alleged that, as a result, they "suffered financial damage in an amount in excess of $10,000.00, in an exact amount to be proven at trial." Turley and Davis also asserted entitlement to costs and attorney fees pursuant to the terms of the Lease, I.R.C.P. 54, and I.C. §§ 12-121 and 12-123.

Koonce and Parker filed a motion for summary judgment in February 2023, which the district court denied. Turley and Davis moved for partial[4] summary judgment in May 2023. Despite the allegations in Turley and Davis's amended complaint that they incurred damages in excess of $10,000, in an amount to be proven at trial, they argued at summary judgment that the damages related to their breach of contract claim against Koonce were based on costs and attorney fees.[5] As to the unjust enrichment claims, Turley and Davis sought damages for the three months' rent for July through September 2022. Turley and Davis acknowledged that Koonce and Parker tendered the rent payments, but asserted Turley and Davis properly refused the payments so they could treat Koonce and Parker as trespassers.

At the hearing on Turley and Davis's summary judgment motion, they advised the district court they were only seeking damages based on attorney fees and "unpaid" rent. The district court concluded that, while the option to renew could be exercised orally and there was a genuine issue of material fact as to whether Koonce did so, because the Lease was not actually renewed in writing, Koonce breached the Lease by remaining at the residence past the date to vacate. The district court also concluded that Koonce was required to pay costs and attorney fees pursuant to the Lease but, because Turley and Davis provided insufficient information regarding fees with

---

[4] Although labeled a motion for summary judgment, the contents of Turley and Davis's request only partial summary judgment.

[5] Turley and Davis only sought partial summary judgment against Parker on the breach of contract claim alleged against him, continuing to assert they were "financially damaged in an amount to be proven at trial."

5

their summary judgment motion, it would defer ruling on the amount of the award. As to Parker, the district court found Parker was not a party to the Lease but, instead, had an "oral" month-to-month tenancy that he breached when he failed to "pay three months of rent." Because Parker was not a party to the Lease provision for attorney fees, the district court declined to consider attorney fees against Parker at that time but indicated it would "make any award of attorney fees pursuant to Idaho Rule of Civil Procedure 54." The district court dismissed both unjust enrichment claims, finding them moot in light of its decision on the breach of contract claims.

Turley and Davis subsequently filed a memorandum requesting "$24,761.20 in reasonable attorneys' fees." Koonce and Parker moved to disallow Turley and Davis attorney fees, arguing: (1) Turley and Davis were not entitled to fees under the Lease because Koonce and Parker were "not actually in default of the contract" and fees were not authorized by any statute; (2) awarding attorney fees to Turley and Davis "would set a dangerous precedent" on the facts of this case given Turley and Davis's persistence in continuing to litigate despite Koonce and Parker's attempts to pay rent and even after they vacated the residence; and (3) Koonce and Parker's request for attorney fees were unreasonable and included fees for irrelevant work, duplicative work, frivolous work, and work that should have been performed at a lower rate by support staff. Turley and Davis filed a response to Koonce and Parker's motion to disallow, claiming the district court's ruling "and Idaho law support an award of attorneys' fees" in the amount requested.

The district court ultimately disallowed or reduced several line-items in Turley and Davis's attorney fee request and awarded them "a total of $16,148.40 in attorneys' fees to be paid by Defendant Karen Koonce." The district court did not award attorney fees against Parker because he was not subject to the Lease and, therefore, was not subject to the Lease provision for attorney fees.[6] Koonce and Parker appeal.

---

[6] The district court's reduction of Turley and Davis's request also included $5,427.80 it attributed to work relative to the claims against Parker, which the district court concluded Koonce should not be required to pay.

6

## II.

## STANDARD OF REVIEW

We exercise free review in determining whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Edwards v. Conchemco, Inc.*, 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct. App. 1986).

## III.

## ANALYSIS

Koonce and Parker argue that the district court erred in: (1) granting Turley and Davis's motion for summary judgment; (2) dismissing Koonce and Parker's amended counterclaims and not granting summary judgment in their favor; and (3) denying, in part, Koonce and Parker's motion to disallow attorney fees. Turley and Davis respond that the district court correctly determined they were entitled to summary judgment and an award of attorney fees and costs. Both parties request costs and attorney fees on appeal. We hold that Koonce and Parker have failed to show the district court erred in granting Turley and Davis's motion for summary judgment or in awarding them attorney fees. We further hold that Koonce and Parker have failed to show they were entitled to summary judgment on their counterclaims. Turley and Davis are awarded costs and attorney fees on appeal.

### A.     Summary Judgment

Koonce and Parker argue that the district court erred in granting Turley and Davis's motion for summary judgment because the district court "explicitly found" that a genuine issue of material fact existed regarding the exercise of a renewal option in the Second Addendum and Third Addendum to the Lease. Koonce and Parker further argue that the district court erred in granting Turley and Davis's motion for summary judgment on their breach of contract claims because Koonce and Parker exercised the option to extend the lease through September 30, 2022, and were thereby not in breach of the Lease. In response, Turley and Davis argue that the district court properly determined that Koonce's oral exercise of the option to renew was a "moot point" because the unambiguous terms of the lease documents required any renewal of the lease to be in a writing and no subsequent writing was ever completed.

Summary judgment is proper if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

7

moving party is entitled to a judgment as a matter of law. I.R.C.P. 56(c). The movant has the burden of showing that no genuine issues of material fact exist. *Stoddart v. Pocatello Sch. Dist. No. 25*, 149 Idaho 679, 683, 239 P.3d 784, 788 (2010). The burden may be met by establishing the absence of evidence on an element that the nonmoving party will be required to prove at trial. *Dunnick v. Elder*, 126 Idaho 308, 311, 882 P.2d 475, 478 (Ct. App. 1994). Such an absence of evidence may be established either by an affirmative showing with the moving party's own evidence or by a review of all the nonmoving party's evidence and the contention that such proof of an element is lacking. *Heath v. Honker's Mini-Mart, Inc.*, 134 Idaho 711, 712, 8 P.3d 1254, 1255 (Ct. App. 2000). Once such an absence of evidence has been established, the burden then shifts to the party opposing the motion to show, via further depositions, discovery responses or affidavits, that there is indeed a genuine issue for trial or to offer a valid justification for the failure to do so under I.R.C.P. 56(d). *Sanders v. Kuna Joint Sch. Dist.*, 125 Idaho 872, 874, 876 P.2d 154, 156 (Ct. App. 1994). Disputed facts and reasonable inferences are construed in favor of the nonmoving party. *Castorena v. Gen. Elec.*, 149 Idaho 609, 613, 238 P.3d 209, 213 (2010). This Court freely reviews issues of law. *Cole v. Kunzler*, 115 Idaho 552, 555, 768 P.2d 815, 818 (Ct. App. 1989).

The dispute in this case centers on the interpretation of the provisions of the Lease and subsequent addendums governing the length of the tenancy and, more specifically, whether and how the length of the tenancy could be extended. It is undisputed that the original tenancy provided for in the Lease was for six months and that there were subsequent six-month extensions reflected in two separate addenda. The second of those two extensions ended on March 31, 2022. It is also undisputed that there was no written agreement, like either of the addendums, memorializing an extension beyond March 31, 2022. Koonce and Parker averred they orally requested an extension until September 30, 2022, and that Davis accepted that request and indicated she would provide a written agreement. Davis, on the other hand, averred that the request for an extension occurred in a text message from Parker on the same day Davis delivered her May 8, 2022, notice to vacate but not until after the notice was served.

The district court, while acknowledging there was a genuine issue of material fact regarding the oral request to exercise the option to extend the Lease, concluded that such an issue did not foreclose summary judgment. According to the district court, summary judgment in Turley

8

and Davis's favor was appropriate as to Koonce[7] because the Lease "required the renewal of the Lease Agreement to be in writing, and there was no written renewal of the Lease Agreement by Koonce." Thus, the district court reasoned, Koonce "breached the Lease," presumably because she did not vacate the residence by June 30, 2022--the eviction date set forth in the notice to vacate. We agree that Koonce breached the Lease by failing to vacate the premises by June 30, 2022.

The interpretation of a contract begins with the language of the contract itself. *Cristo Viene Pentecostal Church v. Paz*, 144 Idaho 304, 308, 160 P.3d 743, 747 (2007). An unambiguous contract will be given its plain meaning. *Bakker v. Thunder Spring-Wareham, LLC*, 141 Idaho 185, 190, 108 P.3d 332, 337 (2005). The plain language of the Lease provides for a six-month term, beginning on July 10, 2020, and ending on January 31, 2021, with "the option to extend to month to month with a 10 day notification of move out." Section 1.12 of the Lease provided for renewal "for additional terms" by "written agreement" but, absent such a renewal, the Lease would "continue for successive terms of one month" subject to termination by "either Lessor or Lessee upon delivery of a 10-day written notice of termination *after* the original 6 months has concluded." (Emphasis added). Thus, Koonce and Parker (who was also listed as a lessee/tenant) were entitled to stay at the residence for the initial six-month term and the only express option in the Lease is for a "month to month" extension. Aside from that express option, Section 1.12 of the Lease allows for renewal by written agreement without any limitation on the length of the renewal.

The First Addendum is a written agreement that extended the tenancy for six months--from January 31, 2021, until July 31, 2021. The First Addendum is dated January 27, 2021 (before the Lease expired) and was signed by the property manager on January 30, 2021, and signed by Koonce on February 1, 2021. As reflected in the timing, the First Addendum was executed in conjunction with the end of the initial lease term.

Unlike the Lease, the First Addendum contemplated two possibilities for renewal: "the option to renew for an additional six months on July 31, 2021," and, if this option was not

---

[7]     Because the district court found that Parker was not a party to the Lease or any of the subsequent addendums since he did not sign any of those documents, the district court's analysis with respect to breach of those documents focused on Koonce. Although we sometimes do the same, we also reference Parker where appropriate given that all of the documents include his name regardless of whether he signed them and given his inclusion in the allegations by Davis and Turley.

9

exercised, the tenancy would be "automatically renew[ed] on a month to month basis." The Second Addendum is dated September 6, 2021, and was signed by Koonce on September 8, 2021, and by the property manager on September 9, 2021. The Second Addendum "extended" the tenancy "6 months to March 31, 2022."

Like the First Addendum, the Second Addendum provides for an "option to renew for an additional six months." That option could be exercised on March 31, 2022--the end of the term provided for in the Second Addendum. Unlike the First Addendum, there is no language providing for an automatic renewal on a month-to-month basis. Even assuming Koonce (and/or Parker) attempted to exercise an option to extend their tenancy before, on, or after March 31, 2022, and even assuming they could do so orally (as they apparently did in the past), no extension was ever memorialized in writing. Thus, pursuant to the terms of the Lease, the tenancy became month-to-month.

With Turley and Davis's consent, Koonce (and Parker) remained month-to-month tenants through June 30, 2022--the date by which they were asked to vacate the residence. Once Koonce and Parker failed to vacate the residence by June 30, 2022, they became holdover tenants. A holdover tenancy is one "arising when a person who has been in lawful possession of a property wrongfully remains as a holdover after his or her interest has expired." BLACK'S LAW DICTIONARY 1773, 1774 (12th ed. 2024). Once a tenant becomes a holdover, the type of tenancy "depends on how the landlord treats the tenant's holdover." *Caldwell Land & Cattle, LLC v. Johnson Thermal Sys., Inc.*, 165 Idaho 787, 798, 452 P.3d 809, 820 (2019). A landlord faced with a holdover tenant "can either (1) treat the tenant as a trespasser or (2) hold the tenant to a new tenancy." *Id.* It is undisputed that Turley and Davis treated Koonce and Parker as holdovers after June 30, 2022, as evidenced by their refusal to accept rent payments and filing an unlawful detainer action. Although Turley and Davis's unlawful detainer action became moot once Koonce and Parker vacated the premises (a point Turley and Davis acknowledged when they dismissed that cause of action), their amended complaint alleging breach of contract and unjust enrichment was based on the same underlying facts, i.e., Koonce and Parker's holdover. Turley and Davis were entitled to summary judgment on these claims based on Koonce and Parker's holdover and refusal to vacate the residence, both of which were contrary to the terms of the Lease.

10

Koonce and Parker also argue that the district court erred in denying their motion for summary judgment on their counterclaim alleging that Turley and Davis "breached the contract by failing to prepare documentation of the Lease extension through September 2022, despite confirming with Koonce/Parker that the Lease was extended and initially accepting rent payments from Koonce/Parker." Koonce and Parker's argument on this point is unsupported by any citation to the record to support their assertion that Turley and Davis had a contractual obligation to "prepare documentation of the Lease extension through September 2022." Moreover, Koonce and Parker fail to provide any cogent argument or authority to support the proposition that their allegations in this regard would entitle them to summary judgment as opposed to a trial based on a genuine issue of material fact. We decline to consider arguments unsupported by cogent argument and authority. *See Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010) (explaining that, regardless of whether an issue is explicitly set forth in the party's brief as one of the issues on appeal, if the issue is not supported by any cogent argument or authority, it cannot be considered).

**B.      Costs and Attorney Fees**

Koonce and Parker argue that the district court erred in partially denying their motion to disallow costs and attorney fees because Turley and Davis were not entitled to attorney fees pursuant to the Lease because they should not have been considered prevailing parties. Koonce and Parker's primary argument in this regard is based on the assertion that, because they attempted to make rent payments for the three months between the date they were asked to vacate (June 30) and the date they actually vacated (September 30) and because those rent payments were the only damages Turley and Davis pursued, they should not be entitled to attorney fees "for pursuing needless litigation." We do not disagree that this litigation could have concluded once Koonce and Parker vacated the residence at which time Turley and Davis could have accepted the previously proffered rent payments once there was no longer a legal basis to treat Koonce and Parker as trespassers. However, *both* parties continued to pursue breach of contract claims after that date. Additional attorney fees were the inevitable consequence of doing so. Because Turley and Davis ultimately prevailed in both pursuing their breach of contract claim and defending against Koonce and Parker's counterclaim, they were entitled to attorney fees pursuant to Section 1.20 of the Lease.

11

Koonce and Parker also contend that the "time entries make it difficult to discern how much time was spent on Turley/Davis' attorney on compensable services," such that the fees should be "disallowed altogether." The district court considered Koonce and Parker's objections to Turley and Davis's attorney fee requests and disallowed more than $8,000 for various reasons, including fees for "irrelevant work" and "duplicative billing." We decline to second-guess the district court's assessment of the appropriate fees to award in this case.

**C.     Costs and Attorney Fees on Appeal**

Both parties request costs and attorney fees on appeal. Koonce and Parker argue that, because the decisions of the district court should be reversed, they are the prevailing parties on appeal and are entitled to costs and attorney fees pursuant to I.C. § 12-121. Because Koonce and Parker are not the prevailing parties on appeal, they are not entitled to attorney fees.

Turley and Davis argue that, because the decisions of the district court should be affirmed, they are the prevailing parties on appeal and are entitled to costs and attorney fees pursuant to the Lease. Pursuant to the Lease, costs and attorney fees are awarded to Turley and Davis as the prevailing parties.

**IV.**

**CONCLUSION**

Koonce and Parker have failed to show the district court erred in granting Turley and Davis's motion for summary judgment or in awarding costs and attorney fees to them as the prevailing parties. Koonce and Parker have also failed to show the district court erred in denying their motion for summary judgment. The district court's judgment is affirmed. Costs and attorney fees are awarded to Turley and Davis.

Chief Judge GRATTON and Judge TRIBE, **CONCUR**.