403 P.2d 855

**CHESTER B. BROWN COMPANY,**
a Nebraska Corporation, Plain-
tiff-Respondent,

v.

Ray GOFF, Roland Goff, Paul Produce, Inc.,
a corporation, Paul Farms, Inc., a corpo-
ration, and West End Farms, Inc., a corpo-
ration, Defendants,

and

West End Farms, Inc., a corporation,
Defendant-Appellant.

No. 9570.

Supreme Court of Idaho.

July 7, 1965.

Rehearing Denied July 26, 1965.

Annest & Hibbert, Burley, for respondent.

Duffin & Duff, Rupert, for appellant.

SMITH, Justice.

Appellant West End Farms, Inc., has appealed from a judgment of $4,856.39 in favor of respondent and against defendants Ray Goff and Roland Goff on their promissory note, together with interest, attorney fees and costs. The appeal is from

the judgment insofar as it adjudges that execution issue on an attachment of 160 acres of farm land "of Roland Goff, purporting to be owned and held by West End Farms, Inc., to the extent of the equity in said Roland Goff, subject only to the vendor's lien in said property, if any," which thus affects appellant's claimed title to the land.

Respondent in its complaint alleged that Ray Goff and Roland Goff purchased the land from another under a contract of sale; that they transferred it to appellant corporation, of which Roland Goff and his wife were the principal incorporators and stockholders, and that therefore they are the owners of the land; that such transfer was in fraud of creditors; that the Goffs were insolvent, and that Ray and Roland Goff executed the promissory note, the subject of this action, on April 10, 1962, which became in default because of non-payment.

The Goffs admitted their execution of the promissory note, and their personal obligation for the debt evidenced by the note. The defendant corporations denied the obligation.

Two issues were framed, i. e., whether the defendant corporations were in fact bona fide corporations and, whether the transfers were in fraud of Goffs' creditors. The trial court resolved the case against

appellant West End Farms, Inc., and defendant Roland Goff on the issue of transfer in fraud of creditors. However, the court's finding as it related to the remaining issue is worthy of note inasmuch as it has a bearing upon the issue of transfer in fraud of creditors. In that respect the court found:

"From what evidence there was, it appears that the corporations are wholly owned by the individual defendants: West End Farms by Roland Goff; Paul Produce and Paul Farms by Ray Goff. However, the precise corporate situation was not explored. The individual defendants, present the morning of the trial, absented that afternoon. They were not under plaintiff's subpoena and were not called to testify."

Appellant's specifications of error raise the question of insufficiency of the evidence to show a fraudulent conveyance, i. e., an intent to defraud creditors by clear and convincing evidence; and adjudging that the equity in the 160 acres of land was that of Roland Goff and not that of appellant. Appellant does not contend that the trial court erred in disregarding the corporate entity in order to reach Goff's equity in the property. For that reason we do not consider the question of sufficiency in the evidence to pierce the corporate veil.

The 160 acres of land adjudged to be subject to execution on respondent's attachment is described as:

The North one-half of the North one-half of Section 16, Township 9 South of Range 22 East of the Boise Meridian, in Minidoka County, Idaho, together with the appurtenances thereunto belonging and together with one-third of the allotments appurtenant to the North one-half and the North one-half of the South one-half of said Section, Township and Range.

The history of transfers of the real property may be summarized as follows:

1. Prior to 1962 480 acres of land, which included the land involved in this appeal, were owned by one Ramseyer and wife subject to their contract of sale to defendants Ray and Roland Goff.

2. Prior to 1962 Ray Goff deeded his interest in the land to Roland Goff (which transfer is not in issue).

3. January 23, 1961, Roland Goff and wife conveyed the 480 acres by quitclaim deed to William H. Shillington and wife. Shillington testified that such deed was actually a security transaction for a debt of $18,500 which Ray and Roland Goff owed to him. This deed was recorded April 20, 1961.

4. One day later, on January 24, 1961, Shillington and wife conveyed the 480 acres by quitclaim deed to appellant, West End Farms, Inc., for a recited consideration of $10.00. Shillington testified that he did not know the reason for giving the deed, and stated there was no consideration for the transfer. The instrument was not recorded until August 18, 1961. The debt of $18,-500 which Goff owed Shillington was not paid until 1962.

5. On February 8, 1962, Shillington and wife and Gerald Morgan, Shillington's partner, and Morgan's wife, mortgaged the 480 acres to The Travelers Insurance Company to secure a loan of $60,000.00.

6. On March 7, 1962, Shillington and wife and Morgan and wife executed a second mortgage encumbering the 480 acres in favor of West End Farms, Inc., to secure a promissory note of $36,000 payable $7,400 a year. The first two payments were assigned and paid to Cassia National Bank to pay personal debts of Roland Goff. The instrument of mortgage contained a two year option granted to West End Farms,

Inc., to purchase the property for $122,500.

The Shillingtons and Morgans, according to Mr. Shillington, purchased the 480 acres from West End Farms, Inc., for the purchase price of $122,500. The purchase price analysis, per Shillington, was as follows:

$18,500, "subtracted as being owed by the Goff Brothers" to Shillington;

$ 7,000, a debt owed by Goffs to Agricultural Services, Inc., assumed by the purchasers;

$60,000, the mortgage executed by Shillingtons and Morgans in favor of The Travelers Insurance Company, and

$37,000, the second mortgage executed by Shillingtons and Morgans in favor of West End Farms, Inc.

7. On March 6, 1963, Shillington and wife and Morgan and wife entered into an agreement to sell the 160 acres involved in this cause to West End Farms, Inc., for a recited consideration of $40,867 payable by release of the second mortgage of $37,000, upon which $22,200 principal sum was still owing, and by assuming liability for payment of one-third, or $18,667, of the balance owing on The Travelers Insurance Company mortgage, together with interest.

8. The second mortgage of $37,000 was satisfied March 15, 1963, by West End Farms, Inc., acting by Roland Goff, its President, and the satisfaction filed of record March 29, 1963.

At the time of the trial without a jury, January 27, 1964, the 160 acres of land was in possession of Roland Goff and West End Farms, Inc., subject to approximately one-third of the balance of the mortgage of The Travelers Insurance Company. Shillington testified that no money changed hands at the time of the transaction mentioned in the preceding paragraphs Nos. 7 and 8; also, that Roland Goff farmed the land during the year 1963.

The witnesses who testified were those called by respondent. None were called by appellant. At the conclusion of respondent's case during the court's afternoon session of January 27, 1964, the parties rested. The record shows however, that respondent had intended to call defendants Ray and Roland Goff as adverse witnesses; they had attended the trial during the morning session, but were absent during the afternoon session.

The evidence essentially is not in conflict.

The parties recognize the basic rule that the finding of the trial court will not be disturbed if based upon competent, substantial evidence. Nichols v. Knowles, 87 Idaho 550, 394 P.2d 630 (1964); Soran v. Schoessler, 87 Idaho 425, 394 P.2d 160 (1964); Clayton v. Clayton, 81 Idaho 416, 345 P.2d 719 (1959). Appellant however urges the rule that the appellate court is not bound by the findings of the trial court and the judgment based thereon when the findings are not sustained by substantial competent evidence. Clayton v. Clayton, supra; Claunch v. Jones, 75 Idaho 271, 270 P.2d 1002 (1954), contending that respondent failed to sustain the burden of proof by clear and convincing evidence that the conveyance by the Goffs to appellant corporation was in fraud of creditors, I.C. § 55–906.

Fraud is never presumed. All the essential elements thereof must be established by the party relying thereon by clear and convincing evidence. Mountain Electric Company v. Swartz, 87 Idaho 403, 393 P.2d 724 (1964); Thomson v. Marks, 86 Idaho 166, 384 P.2d 69 (1963); Barron v. Koenig, 80 Idaho 28, 324 P.2d 388 (1958); Cooper v. Wesco Builders, 76 Idaho 278, 281 P.2d 669 (1955).

"A conveyance or transfer in fraud of creditors may be effected by the organization of a corporation and the transfer of property to it without consideration or with intent to hinder, delay, or defraud creditors." 37 C.J.S. Fraudulent Conveyances § 48; Addison v. Tessier, 65 N.M. 222, 335 P.2d 554 (1959); United Sewing Machine Distributors v. Calhoun, 231 Miss. 390, 95 So.2d 453 (1957); Sheffit v. Koff, 175 Pa. Super. 37, 100 A.2d 393 (1953); State ex rel. Christensen v. Nugget Coal Co., 60 Wyo. 51, 144 P.2d 944 (1944).

"Where a corporation has been organized and used as an instrument to hinder, delay, or defraud creditors of the organizers, the courts, in order to accomplish justice, will go as far as is necessary in disregarding the corporation and its doings;" 37 C.J.S. Fraudulent Conveyances § 48; Addison v. Tessier, supra; Central Fibre Products Co. v. Lorenz, 246 Iowa 384, 66 N.W.2d 30 (1954); Schechter v. Schechter, 366 Pa. 30, 76 A.2d 753 (1950); Harris v. First Nat. Bank of Tuscumbia, 227 Ala. 86, 149 So. 86 (1933). "The fraudulent conveyance is a creature of many forms, one of which is for a debtor to incorporate himself." Addison v. Tessier, supra; Shapiro v. Wilgus, 287 U.S. 348, 53 S.Ct. 142, 77 L.Ed. 355 (1932).

"There are circumstances so frequently attending conveyances and transfers intended to hinder, delay, and defraud creditors that they are denominated 'badges of fraud,' which may be defined as marks, signs, or indicia of fraud, inferences drawn by experience from the customary conduct of mankind, or suspicious circumstances overhanging a transaction." 37 C.J.S. Fraudulent Conveyances § 79; Evans v. Trude, 193

Or. 648, 240 P.2d 940, 949 (1952); Toone v. Walker (1926), 115 Okl. 289, 243 P. 147. Hildeband v. Harrison (Okl.1961), 361 P.2d 498, 505, quoting from Toone v. Walker, supra, contains the following statement: " 'Badges of fraud' are suspicious circumstances that overhang a transaction, or appear on the face of the papers. The possible indicia of fraud are so numerous that no court could pretend to anticipate and catalog them. A single one may stamp the transaction as fraudulent, and, when several are found in combination, strong and clear evidence on the part of the upholder of the transaction will be required to repel the conclusion of fraud." See also, Banner Construction Corporation v. Arnold (Fla.App.1961), 128 So.2d 893; Royal Indemnity Company v. McClendon, 64 N.M. 46, 323 P.2d 1090 (1958); Mitchell v. McClelland (Mo.App.1957), 306 S.W.2d 75; Burns v. Radoicich, 77 Cal.App.2d 697, 176 P.2d 77 (1947).

■ The burden of establishing fraud is on the party who has the affirmative of that issue; but when numerous badges of fraud exist the burden of explaining the transactions will be shifted to the party seeking to uphold the transactions. Evans v. Trude, supra; Ebey-McCauley Co. v. Smith (Okl.1960), 353 P.2d 23; Hildebrand v. Harrison, supra.

■ Among the badges of fraud which appear in the record in the case at bar are: the lack of considerations for the conveyance from defendant Goff to Shillington, and lack of consideration for the conveyance from Shillington to West End Farms, Inc., the following day; the fact that the deed from defendant Goff to Shillington was purportedly a "security transaction," a mortgage rather than a deed, given to secure personal debts, not corporate debts; the property was reconveyed to the corporation, the various conveyances resulting in Goff's personal equity in the land becoming the corporation's equity; the delays in recordation of some of the instruments affecting the real property; the failure of Goff to testify in explanation of the suspicious circumstances overhanging the transactions, or to testify at all; the fact that the Shillington-Morgan payments on the mortgage to appellant, West End Farms, Inc., were assigned over and paid to Cassia National Bank to pay off defendant Roland Goff's personal debts; and the mortgage executed to The Travelers Insurance Company by Shillingtons, although Shillington had previously quitclaimed the mortgaged property to appellant. The record amply supports the findings of the trial court as to the unexplained badges of fraud and the court's conclusion that the conveyance to appellant was in fraud of creditors.

■ Appellant assigns error of the trial court in finding that the conveyance to appellant was "fraudulent as to plaintiff [respondent], a subsequent creditor, without proof of actual fraud having been made."

The assignment is without merit. The record discloses that the Goffs' promissory note, upon which respondent brought this action, is a renewal of an "old account" upon which Goffs paid $3,500 and evidenced the balance by the promissory note; also that the original account dates back to "probably 1959" (per respondent's manager, Mr. Felton), which antedated January 23, 1961, when Roland Goff conveyed to Shillington. Respondent thus was an existing creditor at the time of such transfer and the subsequent transactions.

The judgment of the district court is affirmed. Costs to respondent.

McQUADE, C. J., and McFADDEN, TAYLOR and KNUDSON, JJ., concur.